### In re DEPENDABLE MERCHANDISE CORP.
### No. 88785.

United States District Court
S. D. New York.
March 31, 1953.

258

A. Alan Reich, New York City, for trustee.

Herman M. Trabich, New York City, for Joseph M. Krausz.

LEIBELL, District Judge.

On February 16, 1953, Referee Kurtz certified Joseph M. Krausz to this Court for having refused to answer a question put to him on January 28, 1953, while he was being examined pursuant to Section 21, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 44, sub. a. The issue presented is whether the question put to the witness Krausz concerned the acts, conduct and property of the above-named bankrupt. The question was this: "From whom did you purchase the steel?" In order to understand the pertinency of the question, it is necessary to state certain preliminary facts.

The president and principal stockholder of the bankrupt, Dependable Merchandise Corp., is Irving Jaffe. He is also president and owns the stock of another corporation with a somewhat similar name "Dependable Sales Corporation". The witness, Joseph M. Krausz, formerly had an interest in the Sales corporation.

A petition for an arrangement under Chapter XI of the Bankruptcy Act, 11 U.S.C.A. § 701 et seq., was filed in this Court by Dependable Merchandise Corp. on July 21, 1952. An order of adjudication was entered July 31, 1952, and the matter was referred to Referee Kurtz. A few months before the bankruptcy of Dependable Merchandise Corp., the bankrupt transferred to Dependable Sales Corporation the sum of $25,000. The trustee in bankruptcy charges that this transfer was fraudulent or at best a preferential transfer.

The $25,000 thus received, plus $5,000, was used by Dependable Sales Corporation as a down payment on an alleged contract between the Sales corporation and Joseph M. Krausz for the purchase by the Sales corporation of 550,000 pounds of stainless steel for $192,000. The terms of the contract were so unusual that some of the creditors in the same line of business considered the agreement a strange one. Krausz could deliver stainless steel of any gauge and width and Sales would have to accept it. All deliveries up to the last delivery were to be against sight draft. Krausz was to retain the $30,000 down payment as liquidated damages if the Sales corporation failed to accept any delivery. It appeared to the trustee that the alleged contract was simply a means for syphoning out to Krausz the $25,000 the Sales corporation got from the bankrupt. The trustee has filed a suit against the Sales corporation and Krausz to recover the $25,000. The Sales corporation is in default on its alleged contract with Krausz.

Believing that the contract between the Sales corporation and Krausz was not entered into in good faith and was merely a device to cloak the diversion of $25,000 of the bankrupt's funds, the trustee subpoenaed Krausz for examination under Section 21, sub. a. In an effort to show that the contract was never intended to be performed by Krausz, the trustee's attorney asked Krausz the question: "From whom did you purchase the steel?" Krausz refused to answer the question, which was clearly pertinent and proper, and gave as his explanation for refusing, the following:

"The Witness: That's right. May I answer in a different way? May I answer your statement—I understand of course what you are saying. It is possible that my attorney did not disclose to you why I am so determined about my stand. It is not only the fact that all of the competitors could possibly get the information or not. The very fact is I cannot feel secure in my mind if there is an investigation here after I name the accounts. I feel that I will not be able to go back to these companies again, because they are of the type of companies like General

Motors and General Electric, and they do not want to be involved in anything that participates with legal procedure. On that point I feel I would have great difficulty in going back to these companies and doing business. Now, I need those companies—".

On the present motion to punish Krausz for contempt he states:

"I am engaged in the business of buying and selling various types and kinds of metals. The trade name that I use is Windemere Sales Company. My place of business is located in Red Hook, New York. The operation of my business requires that I purchase the various metals at less than the standard mill price and re-sell it to firms that may require the same and are desirous of purchasing it at what may be termed 'a good buy'. My business is a highly competitive one and the sources of my supply or places where I can purchase the metals at good prices are the most important single factor in the success of my business. If these sources of supply were known to the individuals who would normally purchase the metal from me, or were known to my competitors, I would be out of business within 1 week's time.

"Obviously, in view of the very important information which I and I alone possess as to the sources of supply, there are numerous attempts continually being made to ascertain the sources of my supply so as to deprive me of the operation of my business. It is a highly regarded trade secret, not only in my operation, but with the competitors that I have. Another way of stating this would be to say that the sources of supply are the complete stock-in-trade that any metal dealer such as myself has. If these sources of supply become known to other individuals, they are lost to me and, hence, I am without any business whatsoever."

Neither explanation states a proper legal excuse for refusing to answer the question.

Krausz's sources of supply are not "trade secrets" entitled to protection against disclosure under Rule 30(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., which states that "secret processes, developments, or research need not be disclosed".

The witness, Joseph M. Krausz, is directed to appear again before the Referee, on a date and at a time to be set by the Referee, and at that time while under oath and as part of his examination, he is directed to answer the question "From whom did you buy the steel?" I am giving Krausz an opportunity to purge himself of his contempt. If Krausz fails to answer the question, the Marshal will take him into custody and confine him for six months for contempt of Court. Settle an order accordingly.